Carol **ECKART** and Gerald Eckart,
Appellants–Defendants,

v.

·Gary **DAVIS** and Peggy Davis,
Appellees–Plaintiffs.

No. 70A05–9311–CV–437.[1]

Court of Appeals of Indiana,
First District.

March 22, 1994.

1. This case was diverted to this office on February 14, 1994, by direction of the Chief Judge.

496 ■

Jon R. Pactor, Indianapolis, for appellants.

William B. Keaton, Keaton and Keaton, P.C., Rushville, for appellees.

BAKER, Judge.

Today we decide who is responsible for interest on a note secured by a mortgage following a sale of real estate and the partial assumption of the note and mortgage by the buyers. Appellant-defendants Carol and Gerald Eckart contest the determination that they were responsible for interest on their portion of the principal of a note the appellee-plaintiffs Peggy and Gary Davis assumed. The Eckarts also dispute the amount of the interest award and the trial court's denial of their motion to amend the pleadings on their defense of laches.

*FACTS*

On October 22, 1979, the Eckarts obtained a twenty-year loan from the Arlington State Bank for $50,000 with an 11.5% interest rate, secured by a mortgage on their Rush County real estate. On October 28, 1981, the Eckarts sold the mortgaged realty to the Davises, who assumed the Eckarts' 1979 note and mortgage. The Eckarts' counsel drafted the sole document evidencing the sale, the Mortgage Assumption Agreement, which provides in part:

Whereas, [the Davises] agree to assume and pay only the sum of the Forty-two Thousand Five Hundred Dollars ($42,-500.00) of the principal on the aforesaid mortgage and [Eckarts] agree to continue to pay the balance of said mortgage, approximately Six Thousand Four Hundred and Seventy–Three Dollars and Forty–One Cents ($6,473.41);

.    .    .    .    .

1. *Assumption of Mortgage*, [Davises] hereby covenant, promise and agree (a) to pay said note at the times, in the manner and in all respects as therein provided, (b) to perform each and all of the covenants, agreements and obligations in said mortgage to be performed by [Eckarts] therein, at the time, in the manner and in all respects as therein provided, and (c) to be bound by each and all of the terms and provisions of said note and mortgage as though the said note and mortgage had originally been made, executed and delivered by [Davises]; this agreement recognizing, however, the reduction if any, of the principal amount of said said [sic] note and the payment of interest thereon to the extent of payments made by [Eckarts] in accordance herewith and specifically requiring [Eckarts] to pay on the principal amount of said mortgage, the sum of Six Thousand Four Hundred and Seventy–Three Dollars and Forty–One Cents ($6,473.41).

*Record at 30. Between October 1981 and January 1990, the Davises made monthly payments of $533.50 towards the principal and interest on the note.

In January 1990, the Davises requested the Eckarts to pay their portion of the note. The Eckarts paid $6,473.41 on the note on January 30, 1990. On July 30, 1990, the Davises' counsel wrote the Eckarts and requested payment of their balance on the note, including interest on the $6,473.41 of principal, so that the Davises could satisfy the loan and receive clear title to the property. No further action transpired until June 11, 1992, when the Davises' counsel wrote a second letter to the Eckarts seeking payment of their purported portion of the interest.

When no payment was forthcoming from the Eckarts, the Davises filed suit in August 1992. At the bench trial, the parties and Steve Rice, the manager of the Rushville office of Peoples Trust Company,[2] testified. Almost one week after the May 11, 1993 bench trial, the Eckarts filed a motion to amend the pleadings to conform to the evidence, asserting the defense of laches. The trial court denied the Eckarts' motion to amend and awarded the Davises $14,834, plus post-judgment interest of $6.22 per day.

## DISCUSSION AND DECISION

### I. Interest

■ The interpretation or legal effect of a contract is a question of law to be determined by the court. *Battershell v. Prestwick Sales, Inc.* (1992), Ind.App., 585 N.E.2d 1, 5, *trans. denied.* We must first ascertain the parties' intent at the time the contract was made as disclosed by the language used to express their rights and duties. *INB Banking v. Opportunity Options* (1992), Ind.App., 598 N.E.2d 580, 582, *trans. denied.* Contract language is given its plain and usual meaning, and a contract is ambiguous only if reasonable people would find the contract subject to more than one construction. *Id.* The terms of a contract are not ambiguous merely because ·a controversy exists between the parties concerning its meaning. *Hardiman v. Governmental Interinsurance Exch.* (1992), Ind.App., 588 N.E.2d 1331, 1334,

*trans. denied.* Where the terms of a contract are clear and unambiguous, they are conclusive and we will not construe the contract or consider extrinsic evidence but merely apply the contractual provisions. *Jackson v. DeFabis* (1990), Ind.App., 553 N.E.2d 1212, 1215.

■ The Eckarts claim the contract is unambiguous and does not impose any obligation upon them to pay interest on their portion of the principal. We agree that the contract is unambiguous, but that it requires the Eckarts to pay interest. The Eckarts agreed to "continue to pay the balance of said mortgage."[3] The contract language specifically identifies only the amounts of principal each party must pay because the interest on those amounts could change depending upon prepayments or late payments of principal. Thus, the plain and ordinary meaning of the agreement is that the Eckarts were responsible for $6,473.41 of the principal and the interest thereon. This interpretation is reinforced by the agreement's subsequent language regarding the reduction of the principal and "the payment of interest thereon." We affirm the trial court's decision on this issue.

■ If we had found the contract was ambiguous and could be read to mean that the Eckarts were to pay $6,473.41 of the principal and no interest or vice versa, the result would not change. If an agreement is ambiguous, we determine whether the ambiguity is patent or latent. *See Hauck v. Second Nat'l Bank of Richmond* (1972), 153 Ind.App. 245, 261, 286 N.E.2d 852, 862. A patent ambiguity is apparent on the face of the instrument and arises from an inconsistency or inherent uncertainty of language used so that it either conveys no definite meaning or a confused meaning. *Id.* Extrinsic evidence is not admissible to explain or remove a patent ambiguity. *Id.* Conversely, a latent ambiguity does not emerge until one attempts to implement the words as directed in the instrument. Extrinsic evi-

---

2. Peoples Trust Company was the successor-in-interest to Arlington State Bank.

3. Although a debtor does not pay a mortgage, but a note which is usually secured by a mortgage (a

mortgage is actually the conveyance of one's realty to secure the note), the terms are unfortunately often used interchangeably to connote the principal and interest due upon a note.

dence is admissible to explain a latent ambiguity. *Id.* at 261–62, 286 N.E.2d at 862.

■ If the mortgage assumption agreement were ambiguous, it would be a patent ambiguity, because the language itself would fail to convey a definite meaning regarding the Eckarts' obligation to pay any interest. Thus, extrinsic evidence could not be considered to construe the agreement. Confronted with an ambiguous agreement, we utilize other means to determine the parties' intent. *Keithley's Auction Service v. Children of Jesse Wright* (1991), Ind.App., 579 N.E.2d 657, 659. Generally, an ambiguous contract is construed against the party that drafted the agreement, who in this case was the Eckarts' counsel. *See id.* If the Eckarts did not intend to pay interest upon the $6,473.41, they could have inserted a provision in the mortgage assumption agreement clearly indicating this intent. Instead, the agreement as construed against the drafter requires the Eckarts to pay interest on their portion of the principal.

## II. Excessive Damages

■ We next consider the Eckarts' claim that the interest award of $14,834 was excessive. Initially, we observe that because the award was not a jury verdict, the Eckarts were not required to file a motion to correct errors alleging excessive damages. *See* Ind.Trial Rule 59(A) (filing motion to correct errors for excessive jury verdict is prerequisite for appeal).

■ The Eckarts erroneously assert that the Davises failed to present any evidence of the amount of interest the Eckarts owed. Steve Rice testified that the total balance due on the note was $19,852.20 as of the trial date. He further testified that had the Eckarts paid their portion of the principal and interest, the Davises' balance on the trial date would have been only $5,018.20. The trial court's award of $14,834 ($19,852.20 – $5,018.20) was clearly based upon Rice's testimony. However, the trial court failed to consider that the Eckarts paid the principal amount of $6,473.41 on January 30, 1990. Therefore, the interest on this portion of the principal did not continue to accumulate. Neither the mortgage assumption agreement

nor the note itself provide for compounded interest. At most, the Eckarts are responsible only for the interest accumulated on the $6,473.41 prior to January 30, 1990. Thus, we remand for the correct calculation of the interest award in accordance with this opinion. This recalculation also upsets the post-judgment interest award of $6.22 per day.

Also, because the agreement established an interest rate of 11.5%, we reject the Eckarts' contention that the statutory rate should be used to compute the award.

## III. Amendment of Pleadings

Lastly, we review the Eckarts' argument that the trial court erred by denying their motion to amend the pleadings to conform to the evidence to assert the defense of laches. The Eckarts filed their motion six days after trial. The trial court denied their motion to amend because they first raised laches during closing argument.

■ The Eckarts contend that laches was tried by implied consent of the Davises. Upon review of the record, though, laches was not litigated. Only after the close of the evidence was laches raised. Before a party may impliedly consent to the trial of an unpleaded issue, he must be given some notice as to the existence of that issue. *Svetich v. Svetich* (1981), Ind.App., 425 N.E.2d 191, 194. Additionally, a new issue may not be injected into a trial under the guise of evidence relevant to an already pleaded issue. *Id.* Because laches was not raised during the presentation of the evidence, the trial court did not abuse its discretion by denying the Eckarts' motion to amend.

Judgment affirmed in part, reversed in part, and remanded.

SULLIVAN and RUCKER, JJ., concur.