## NORTHERN INDIANA COMMUTER TRANSPORTATION DISTRICT, Appellant–Plaintiff,

v.

## CHICAGO SOUTHSHORE AND SOUTH BEND RAILROAD, Appellee–Defendant.

No. 46A03–9506–CV–187.

Court of Appeals of Indiana.

Feb. 20, 1996.

Michael C. Harris, Harris, Welsh & Lukmann, Chesterton, for appellant.

Stanley C. Fickle, Barnes & Thornburg, Indianapolis, Michael J. Daley, Gregory C. Ward, Nisen & Elliott, Chicago, for appellee.

## OPINION

BAKER, Judge.

Today we review the scope of the trial court's subject matter jurisdiction, under Indiana's Uniform Arbitration Act (Act),[1] to review an arbitration award issued in Illinois where the parties had entered into a written agreement which provided that arbitration and any subsequent appeal would be held in Indiana. Appellant-plaintiff Northern Indiana Commuter Transportation District (NICTD) contends that the trial court erred in granting appellee-defendant Chicago SouthShore and South Bend Railroad's (SouthShore) motion to dismiss for lack of subject matter jurisdiction.

## FACTS

SouthShore is an Indiana partnership that operates a railway freight business between Chicago, Illinois, and South Bend, Indiana, on railroad tracks referred to as the South Shore Line. NICTD is an Indiana municipal corporation that owns the South Shore Line and also operates a passenger service between Chicago and South Bend on the South Shore Line.

In September 1989, SouthShore's predecessor, Anacostia & Pacific (A & P), and NICTD entered into a Memorandum Agreement (Agreement) which provided that NICTD would be responsible for maintaining the South Shore Line to permit both freight and passenger operations. In return, A & P agreed to pay a portion of the maintenance costs, including a maintenance-of-way (MOW) fee equal to a specified percentage of its gross revenues. After entering into the Agreement, A & P assigned its rights and obligations under the Agreement to South-Shore.

During 1992, a dispute arose between NICTD and SouthShore concerning the provision in the Agreement regarding the MOW fee. NICTD and SouthShore were unable to resolve their differences through mediation. As a result, on April 8, 1993, NICTD filed a demand for arbitration, pursuant to the parties' Agreement, with the American Arbitration Association. The parties then selected three arbitrators from Chicago to hear their dispute. Although the Agreement provided that all arbitration proceedings must take place within the State of Indiana, the parties agreed to waive that requirement for the convenience of the arbitrators and to hold a portion of the arbitration proceedings in Chicago.

After a hearing, the arbitration panel issued its award on August 11, 1994. The award provided that SouthShore's annual MOW fee would be twelve percent (12%) of its gross revenues. On November 18, 1994, NICTD filed an amended complaint in the LaPorte Superior Court of Indiana, seeking to set aside the arbitration award. South-Shore filed a motion to dismiss NICTD's action for lack of subject matter jurisdiction arguing that the courts in Illinois had exclusive jurisdiction to review the arbitration award. Specifically, SouthShore alleged that because NICTD agreed to waive the provision in the Agreement requiring that all arbitration proceedings take place in Indiana, it similarly waived Indiana's jurisdiction to review the arbitration award.

On February 22, 1995, the trial court issued an order granting SouthShore's motion to dismiss. Specifically, the trial court found that the situs of the arbitration determines which courts have subject matter jurisdiction

---

1. IND. CODE §§ 34–4–2–1 to 34–4–2–22.

to review an arbitration award. Here, the trial court concluded that because the arbitration was held in Illinois, the Illinois courts were the only courts with subject matter jurisdiction to hear an appeal of the arbitration award. Record at 318.

## DISCUSSION AND DECISION

### I. Motion to Dismiss

■■■ NICTD contends that the trial court erred in granting SouthShore's motion to dismiss for lack of subject matter jurisdiction. A motion to dismiss for lack of subject matter jurisdiction presents a threshold question concerning the court's power to act. *Perry v. Stitzer Buick GMC, Inc.* (1994), Ind.App., 637 N.E.2d 1282, 1286. In ruling on a motion to dismiss for lack of subject matter jurisdiction, the court may resolve factual disputes. *Id.* The court has considerable latitude in devising procedures to ferret out the facts pertinent to jurisdiction, and it is well established that in doing so it may consider not only the complaint and motion but any affidavits or other evidence submitted. *Id.* Moreover, when considering a motion to dismiss for want of subject matter jurisdiction, a court may weigh the evidence to determine the existence of the requisite jurisdictional facts. *Id.*

■■■ Initially we note that, pursuant to the Act, the parties' Agreement conferred jurisdiction on the courts of Indiana to enforce the Agreement, hold arbitration proceedings and enforce awards therefrom. The Act in relevant part provides:

The term "court" shall mean any circuit or superior court. The making of an agreement ... providing for arbitration in this state confers jurisdiction on the court to enforce the agreement under this chapter and to enter judgment on an award thereunder.

IND. CODE § 34-4-2-17. In the instant case, the parties' Agreement provides as follows:

This Agreement is to be interpreted pursuant to the laws of the State of Indiana.

All arbitration proceedings shall take place within the State of Indiana and shall be governed by the Rules of the American Arbitration Association.

The decision of a majority of the three arbitrators shall be final and conclusive between the parties, except that if either party claims that the arbitrators' decision is based upon an error of law it may, within 30 days after receipt of such decision, institute an action at law within the State of Indiana to determine such legal issue.

R. at 50–51.

Although the Act and the parties' Agreement conferred subject matter jurisdiction on the courts of Indiana, SouthShore now maintains that because NICTD agreed to waive the situs of the arbitration, it also waived Indiana's jurisdiction to review the arbitration award. In support of its argument, SouthShore cites several cases from other states which have held that a court has subject matter jurisdiction to review an arbitration award if the court is in the state in which the arbitration was held. *See Tru–Green Corp. v. Sampson* (1991), Ky.App., 802 S.W.2d 951; *State ex. rel. Tri–City Const. Co. v. Marsh* (1984), Mo.App., 668 S.W.2d 148; *Stephanie's v. Ultracashmere House, Ltd.* (1981), Ill.App.3d, 98 Ill.App.3d 654, 54 Ill.Dec. 229, 424 N.E.2d 979; *United Elec. Radio and Mach. Workers of America v. General Elec. Co.* (1948), N.Y.Sup., 193 Misc. 146, 83 N.Y.S.2d 768, aff'd. Mem., 275 A.D. 908, 90 N.Y.S.2d 273; *Stancioff v. Hertz* (1980), 10 Mass.App. 843, 406 N.E.2d 1318; *Kearsarge Metallurgical Corp. v. Peerless Ins. Co.* (1981), 383 Mass. 162, 418 N.E.2d 580. However, the cases cited by South-Shore are distinguishable from the present case. In a majority of these cases, the parties had not entered into a specific written agreement specifying the location for arbitration or specifying where the parties were required to challenge an arbitration award. As a result, those courts did not have to consider the impact of an agreement conferring jurisdiction. Further, in the one case in which the parties had entered into a written agreement specifying the location for arbitration and had submitted to arbitration in that state, the parties were seeking to challenge the arbitration award in a state other than

that provided for by agreement. *See Tru–Green Corp.*, 802 S.W.2d at 953 (state specified in the parties' agreement had jurisdiction over the appeal of the arbitration award).

■ In the present case, SouthShore and NICTD entered into a written agreement which expressed the parties' intention of conferring jurisdiction over arbitration proceedings on the courts in Indiana. Although NICTD agreed to waive the situs of the arbitration, this waiver did not alter or nullify the provisions in the parties agreement which conferred subject matter jurisdiction on the courts of Indiana. We believe that where the parties have entered into an agreement, that agreement, and not the place of arbitration, controls the determination of which state has jurisdiction over an appeal of an arbitration decision. Therefore, we find that Indiana retains jurisdiction to review the arbitration award.

Further we note that had the parties intended to change the Agreement to confer jurisdiction in Illinois, Section 16.9 of the parties' Agreement specifies the procedures for amending the Agreement. Section 16.9 provides:

> It is intended that the subject matter hereof shall be embodied in definitive agreements to be prepared and executed by the parties subsequent to the date hereof. However, pending execution of such definitive agreements, this Agreement shall be deemed binding and enforceable and shall reflect the entire agreement of the parties with respect to the subject matter hereof, superseding any prior agreements or understandings.

R. at 51. Pursuant to Section 16.9, the parties in the past had executed clarifications and amendments to the Agreement, all of which were in writing and signed by both parties. The parties in the instant case did not avail themselves of these procedures. Therefore, we find that the parties have not amended the Agreement to provide for jurisdiction in Illinois. Accordingly, Indiana retains jurisdiction.

## II. Appeal of Arbitration Award

■ On November 18, 1994, NICTD filed a seven count amended complaint in the La-Porte Superior Court, Indiana, challenging the arbitration award. NICTD appealed the arbitration award pursuant to Section 16.7 of the parties' Agreement which provided:

> The decision of a majority of the three arbitrators shall be final and conclusive between the parties, except that if either party claims that the arbitrators' decision is based upon an error of law it may, within 30 days after receipt of such decision, institute an action at law within the state of Indiana to determine such legal issue.

R. at 51. As a result of the parties' Agreement, the scope of our review is extremely narrow. The arbitration panel's factual determinations are final and conclusive between the parties and we may only review whether the arbitration panel's decision is based upon an error of law.

In Count I, II, III and IV of its complaint, NICTD contends that the arbitration panel's finding 1(b), interpreting Section 3.2 of the parties' Agreement regarding the MOW fee, is contrary to law. The parties' Agreement provides:

> Section 3.2
>
> (a) [SouthShore] shall pay NICTD an annual fee representing its portion of expenditures made for dispatching, maintenance and improvements of Joint Assets, and other costs associated with [SouthShore's] use of Joint Assets ("MOW Fee"). The MOW Fee is an amount determined by multiplying Gross Revenues . . . by 12 percent. . . .
>
> Upon any sale of control by [SouthShore], . . . NICTD shall have the option of requiring the purchaser to adopt the Alternative MOW Fee described in the Letter Agreement. Commencing in 1992 and every third year thereafter, the parties shall consult to determine whether the MOW Fee adequately compensates NICTD for inflation based increases . . . and shall make appropriate adjustments on the basis of such determination. . . .

R. at 31. In its finding 1(b), the arbitration panel determined that: (1) pursuant to Section 3.2(a) of the Agreement, SouthShore's annual MOW fee would be twelve percent (12%) of its gross revenues and (2) the second paragraph of Section 3.2(a) applies only in the event of a sale of control and does not otherwise affect the calculation of the MOW fee. R. at 66.

On appeal, NICTD contends that, contrary to the arbitration panel's decision, the second paragraph of Section 3.2(a) is applicable to the instant case. Specifically, NICTD argues that it is entitled to adjust the MOW fee pursuant to the second paragraph of Section 3.2(a) regardless of a sale of control. In support of its argument, NICTD maintains that the second paragraph contains two clauses which relate to the adjustments of the MOW fee. The first clause of the second paragraph pertains to the adjustment of the MOW fee in the event of a sale of control and the second clause pertains to adjustments of the MOW fee when no sale of control has taken place.

The interpretation or legal effect of a contract is a question of law to be determined by the court. *Eckart v. Davis* (1994), Ind.App., 631 N.E.2d 494, 497. Contract language is given its plain and usual meaning, and the contract is ambiguous only if reasonable people would find the contract subject to more than one construction. *Id.* The terms of a contract are not ambiguous merely because a controversy exists between the parties concerning its meanings. *Id.* Where the terms of a contract are clear and unambiguous, they are conclusive and we will not consider the contract or consider extrinsic evidence, but merely apply the contractual provisions. *Id.* Further, particular words and phrases of a contract cannot be read alone, and the parties' intention must be gleaned from the contract considered as a whole. *Wendy's of Fort Wayne, Inc. v. Fagan* (1994), Ind.App., 644 N.E.2d 159, 161.

Here, because we believe that the second paragraph of Section 3.2(a) is unambiguous, we shall give the language its plain

and usual meaning. The plain and usual meaning of the second paragraph of Section 3.2(a), read as a whole, supports NICTD's position that it is entitled to adjust the MOW fee under two sets of circumstances. One, in the event of a sale of control and two, in the absence of a sale of control. First, in the event that SouthShore sells control of its railway freight business, the first clause gives NICTD the option of requiring the purchaser to adopt an alternative MOW fee. Second, in the event that SouthShore retains control of its railway freight business, the second clause gives NICTD the ability to consult with SouthShore every three years to determine whether the MOW fee adequately compensates it for inflation-based increases and allows it to make appropriate adjustments on the basis of those determinations. To hold otherwise would prohibit NICTD from adjusting the MOW fee to ensure it receives adequate compensation for inflation-based increases unless SouthShore sells control of its railway freight business. We believe that this result would be inconsistent with the parties' intention of providing for a MOW fee that would adequately compensate NICTD for maintaining and improving the parties' joint assets. Further, we believe that had the parties intended that the second sentence apply only upon the sale of SouthShore's interest, the second sentence would not have referred to the "parties" but instead would have referred to SouthShore's "successor in interest" or a similar term. Therefore, we find that the arbitration panel's finding that the second paragraph of Section 3.2(a) only applies in the event of a sale of control and does not otherwise affect the calculation of the MOW fee is contrary to law.[2]

### III. Conclusion

We find that the Indiana courts acquired subject matter jurisdiction over the arbitration proceedings pursuant to the parties' Agreement and the Act. Normally, our holding would require us to remand this cause to the trial court and instruct it to reinstate NICTD's complaint. However, in the inter-

---

**2.** Because of our resolution of Issues I and II, we need not address the remaining three counts of

NICTD's complaint.

ests of judicial economy, we have addressed NICTD's complaint and determined that the second paragraph of Section 3.2(a) is applicable to the instant case. Thus, we remand this case to the trial court with instructions for it to submit the case to arbitration for purposes of determining the MOW fee.

Reversed and remanded.

NAJAM and DARDEN, JJ., concur.