**BETHLEHEM STEEL CORPORATION, Appellant–Defendant,**

v.

**CONSOLIDATED RAIL, CORPORATION, Appellee–Plaintiff.**

**No. 45A03–0004–CV–130.**

Court of Appeals of Indiana.

Dec. 14, 2000.

David W. Weigle, Hammond, Indiana, George W. Gessler, Mark A. Pellegrino, Gessler, Hughes & Socol, Ltd., Chicago, Illinois, Attorneys for Appellant.

Harold Abrahamson, Abrahamson & Reed, Hammond, Indiana, Attorney for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE [1]

Appellant–Defendant, Bethlehem Steel Corporation (Bethlehem), appeals the trial court's grant of Appellee Plaintiff's, Consolidated Rail Corporation (Conrail), motion for partial summary judgment.

We reverse and remand for new trial on the issue of liability.

### ISSUES

Bethlehem raises four issues on appeal, two of which we find dispositive [2] and restate as follows:

1. Whether the trial court erred in granting Conrail's motion for partial summary judgment.

2. Whether the trial court's grant of Conrail's motion for partial summary judgment should be reversed and summary judgment in favor of Bethlehem should be entered.

### FACTS AND PROCEDURAL HISTORY

Conrail, a railroad carrier, provided railroad service to Bethlehem. In connection with the agreement to provide rail services, Conrail and Bethlehem entered into an agreement on April 30, 1974. The agreement provides in pertinent part as follows:

3. Maintenance

Said sidetrack shall be maintained (including removal of ice, snow, weeds and debris) and renewed to the satisfaction of the Railroad [Conrail]; the work shall be performed and the cost thereof borne as follows:

By the Railroad, at its expense, that portion on Railroad right of way.

By the Industry [Bethlehem], at its expense, that portion beyond Railroad right of way.

7. Clearances

The Industry shall not permit any obstruction over said sidetrack, less than 22 feet above top of rail, or alongside of said sidetrack less than 8 feet from center of track, with the necessary additional clearances on curves.

The minimum clearances herein specified may be changed by the Railroad to meet changes in operating requirements and conditions or legal requirements, and the Industry shall, upon written notice by the Railroad make such changes in its tracks and facilities of the Industry, as may be necessary.

The Industry shall observe and comply with all rules and regulations of the Railroad now in effect and as from time to time amended, governing the handling of flammable liquids and compressed gases, including loading and unloading of tanks cars, the location of racks and storage tanks, and protection of oil sidings from danger due to stray electric currents and other causes; said rules and regulations, designated as the current issue of General Notice No. 201 (basic number), attached hereto and by this reference made a part hereof. (Copy to be attached when track is to be used to handle flammable liquids and compressed gases.)

8. Liability in Connection with Sidetrack

(b) *Other Liability.* Except as herein otherwise specifically provided, in respect of all loss or damage to property, other than by fire as aforesaid, or in respect of injury to or death of persons, caused by or in connection with the construction, operation, maintenance, use

1. We heard oral argument in this case on November 15, 2000, in Indianapolis, Indiana.

2. Because we reverse the trial court's grant of partial summary judgment, we need not discuss whether the trial court erred in limiting Bethlehem's cross-examination of Conrail's witness, nor do we need to discuss whether the trial court erred in awarding Conrail's attorneys' fees, court costs and pre-judgment interest.

presence or removal of said sidetrack, as between the parties hereto;

(i) The Railroad shall assume responsibility for and hold the Industry harmless and defend the Industry from all losses (including claims for injuries to employees of the Industry or of the Railroad), expenses, attorneys' fees, damages, claims and judgments arising from or growing out of the actionable acts or omissions of the Railroad, its agents or employes [sic] solely or in conjunction with a third person;

(ii) The Industry shall assume responsibility for and hold Railroad harmless and defend the Railroad from all losses (including claims for injuries to employes [sic] of the Industry or of the Railroad), expenses, attorneys' fees, damages, claims and judgments arising from or growing out of actionable acts or omissions of the Industry, its agents or employes [sic], solely or in conjunction with a third person; and

(iii) The parties hereto shall equally bear all losses (including claims for injuries to employes [sic] of the Industry or of the Railroad), expenses, attorneys' fees, damages, claims and judgments arising from or growing out of the joint or concurring actionable acts or omissions of both parties hereto, their respective agents or employes [sic].

(iv) Notwithstanding anything contained in this Section 8(b), and irrespective of any joint or concurring negligence of the Railroad, the Industry assumes sole responsibility for and agrees to indemnify, save harmless and defend the Railroad from and against all claims, actions or legal proceedings arising, in whole or in part, from (a) the failure of the Industry to comply with requirements set forth in Sections 3 and 7 hereof, or (b) any claims, actions or legal proceedings under the Federal Employer's Liability Act and any amendments to said Act now or hereafter in effect, alleging or claiming, in legal effect, that the Railroad failed to correct or guard against an unsafe condition if the unsafe place to work or the condition resulted in whole or in part from any act or omission of the Industry, its agents, employes [sic], tenants, licensees or invitees.

(R. 13–15).

On November 23, 1990, Gregory Seckler (Seckler), a Conrail employee, was killed when he was caught between a moving Conrail train and a loading dock at Bethlehem's Burns Harbor Plant in Porter County, Indiana. Following the accident, Conrail investigated the accident. M.A. Love (Love), a senior officer from Conrail's Division Headquarters in Dearborn, Michigan, conducted the investigation. Conrail took statements from crew members and supervisors, inspected and photographed the railroad cars and the scene, inspected and tested equipment, took measurements, and conducted two reenactments. Subsequently, Love issued the following report:

On Friday November 23, 1990 the yard crew YDBH03 on duty at 8:00 AM CST at Burns Harbor Yard with the crew of Engineer J.K. Evans, Conductor G.L. Seckler, and Trainman J.W. Fields were switching the Bethlehem Steel Plant at approximately 3:10 PM CST. When Conductor G.L. Seckler was rolled between the CR 607070 empty gondola and loading dock.

Mr. Seckler received a contusion to left shoulder, fractured right forearm, fractured ribs both front and back, and interior laceration of both liver and spleen which were fatal.

Mr. Seckler caused his own injuries as a result of the following.

1.  Placing himself in the close clearance situation of which he was aware of.

2. By working on the east side of track #540 when there was no reason to due [sic] so.

3. He was in clear view of the Brakeman while the shoving into the building started and crossed from west to east in front of moving equipment in a matter of 30 to 60 seconds. For which there was no reason to do so.

4. Mr. Seckler and his Brakeman Fields had an understanding (which was obtained through the statements) that neither of them would work on the east side and thats [sic] where he was found.

5. Not paying attention to the instruction he set for his own crew.

6. The entire move could have been performed from the west side of the track without incident and should have been done so.

Corrective Actions:

All close clearance situation in Bethlehem Steel Plant will be identified and those without visible clearance signs as track 540 was, will have signs installed.

Personal contact with all crews going on duty at Burns Harbor to identity [sic] close clearance inside the mill.

Issue instructions that under no circumstance are employees to be allowed to position between the dock and dock track regardless of clearances.

Personal contact with all crews through their Trainmaster discussing close clearance situations in their assigned territory.

(R. 2737–2738).

Conrail promptly contacted Seckler's widow and commenced settlement negotiations with her. Within two months, Conrail reached a $620,000 settlement agreement with the widow. Seckler's widow never retained a lawyer and did not file suit against Conrail. After agreeing to settle, Conrail demanded indemnity from Bethlehem under their agreement. Bethlehem declined to indemnify Conrail for the accident. Conrail then brought action against Bethlehem for indemnification.

On April 20, 1998, Conrail's expert, William Pugh (Pugh), was deposed by Bethlehem. Pugh, a former National Transportation Safety Board examiner, was asked, "[w]hat if any blame do you assess to Bethlehem in this case?" (R. 928). Pugh responded by stating, "Lack of clearance signs and sufficient lighting. Everyone talked about it being dark in there and the clearance sign was gone. A clearance sign is just another caution warning. And lighting, of course, you can see better where you are going, what you are doing, particularly coming from the outside, walking in on a bright day or something. They all talked about it being dark." (R. 928–929).

On May 12, 1998, Conrail filed a motion for partial summary judgment on liability. The motion contended that the terms and conditions of the agreement between Conrail and Bethlehem required that Bethlehem "assume full responsibility for…and indemnify, and save harmless" the railroad from "any claims, actions or legal proceedings under the Federal Employer's Liability Act." (R. 31–32). Bethlehem responded and asserted that Conrail's motion was not supported by the law or facts. Furthermore, Bethlehem maintained that multiple issues of fact exist, requiring determination by a jury. On November 4, 1998, the trial court entered an order determining that the indemnity agreement was unambiguous and valid and that Bethlehem failed to object to the settlement. The trial court further held that Conrail was entitled to indemnity in the full amount; and the only remaining issue was the question of reasonableness of the settlement amount.

A jury trial commenced on December 13, 1999. After trial, the jury returned a verdict in favor of Conrail in the amount of $403,000. On February 28, 2000, a hearing was held on the issues of attorneys' fees, costs and pre-judgment interest.

The trial court awarded Conrail attorneys' fees, costs and pre-judgment interest. This appeal followed.

## DISCUSSION.

### I. *Summary Judgment*

The standard of review when reviewing a grant or denial of summary judgment is well-settled. Our standard of review is the same as it was for the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Miller v. Grand Trunk Western R.R., Inc.,* 727 N.E.2d 488, 491 (Ind.Ct.App.2000). We must consider the pleadings and evidence designated pursuant to Ind. Trial Rule 56(C) without deciding their weight or credibility. *Id.* Summary judgment should be granted only if such evidence shows that there is no genuine issue of material fact and that judgment is warranted as a matter of law. *Id.*

■ Bethlehem asserts that the trial court erred in granting Conrail's motion for partial summary judgment. However, Conrail contends that Bethlehem has waived review of this claim because it did not specifically designate to the trial court the issues of material fact and evidence relevant thereto. T.R. 56(H) states that "[n]o judgment rendered on the [summary judgment] motion shall be reversed on the ground that there is a genuine issue of material fact unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court."

In *Trout v. Buie,* 653 N.E.2d 1002, 1006 (Ind.Ct.App.1995), this court held that "[a]s long as the trial court is apprised of the specific material on which the parties rely either in support of or in opposition to the motion then the designation requirement has been met." Furthermore, in *Van Eaton v. Fink,* 697 N.E.2d 490, 494 (Ind.Ct.App.1998), *reh'g denied,* this court held that T.R. 56(C) does not mandate the manner in which a party is to specifically designate material. *Van Eaton* also held

that it is within a party's discretion whether they designate material to the court in a separate filing or in a brief in opposition to the motion. *Id.* Bethlehem complied with the requirements of T.R. 56. In opposing summary judgment and presenting its motion for reconsideration and motion to correct error, Bethlehem specifically designated the unresolved material issues and evidence upon which it relied. Additionally, Bethlehem claims that it provided the trial court with record citations and separate appendices specifically identifying the materials, including: deposition and trial testimony, exhibits, official investigative reports employee-injury analyses, witness statements, internal railroad memoranda, investigative sketches and diagram, Agreement for Industry Track, Joint Petition and Indiana Public Service Commission Order, settlement confirmations and drafts, notice correspondence, and relevant district court opinions. Consequently, we find that Bethlehem did not waive review of its claim that the trial court erred in granting Conrail's motion for partial summary judgment.

### A. *Section 8(b)(ii) of the Agreement*

Bethlehem argues that under the agreement, causation and fault are requisite factual determinations for the application of indemnity and it was error for the trial court to remove those issues from the jury. The trial court held that "[a] written contract was in effect between the parties, requiring the Defendant [Bethlehem] to indemnify Plaintiff [Conrail] for any claims arising as a result of the work under this contract." (R. 986). Bethlehem asserts that the trial court misinterpreted the agreement. We agree.

■ The interpretation or legal effect of a contract is a question of law to be determined by the court. *Eckart v. Davis,* 631 N.E.2d 494, 497 (Ind.Ct.App.1994). First, we must ascertain the intent of the parties at the time the contract was made. *Id.* Contract language is given its plain

and usual meaning. *Id.* A contract is ambiguous only if reasonable people would find the contract subject to more than one construction. *Id.* The terms of a contract are not ambiguous due to the fact that a controversy exists between the parties concerning its meaning. *Id.* "Where the terms of a contract are clear and unambiguous, they are conclusive and we will not construe the contract or consider extrinsic evidence but merely apply the contractual provisions." *Id.*

As previously mentioned, section 8(b)(ii) states that:

> (ii) The Industry shall assume responsibility for and hold Railroad harmless and defend the Railroad from all losses (including claims for injuries to employes [sic] of the Industry or of the Railroad), expenses, attorneys' fees, damages, claims and judgments arising from or growing out of actionable acts or omissions of the Industry, its agents or employes [sic], solely or in conjunction with a third person; and

(R. 15). The plain language of this subsection requires Conrail to prove that Bethlehem's "actionable acts or omissions" played a part in or caused Seckler's accident.

■ Conrail asserts that it did prove that Bethlehem played a part in or caused Seckler's accident. Conrail's expert, Pugh, testified in his deposition that blame could be assessed to Bethlehem for lack of clearance signs and sufficient lighting. However, Love's report rebuts Pugh's testimony by stating that Seckler caused his own injuries as a result of, among other things, placing himself in the close clearance situation of which he was aware. Thus, we find that genuine issues of material fact exist and are in dispute.

### B. *Section 8(b)(iv) of the Agreement*

■ Bethlehem claims that section 8(b)(iv) of the agreement does not automatically indemnify Conrail in this action. We agree. Section 8(b)(iv) states that:

> (iv) Notwithstanding anything contained in this Section 8(b), and irrespective of any joint or concurring negligence of the Railroad, the Industry assumes sole responsibility for and agrees to indemnify, save harmless and defend the Railroad from and against all claims, actions or legal proceedings arising, in whole or in part, from (a) the failure of the Industry to comply with requirements set forth in Sections 3 and 7 hereof, or (b) any claims, actions or legal proceedings under the Federal Employer's Liability Act and any amendments to said Act now or hereafter in effect, alleging or claiming, in legal effect, that the Railroad failed to correct or guard against an unsafe condition if the unsafe place to work or the condition resulted in whole or in part from any act or omission of the Industry, its agents, employes [sic], tenants, licensees or invitees.

(R. 15). Bethlehem asserts that section 8(b)(iv) is also grounded in causation and fault. We agree. By its terms, section 8(b)(iv) does not apply to all claims, but only those "claims, actions or legal proceedings arising, in whole or in part," from violations of sections 3 and 7 of the agreement.

As previously stated, Seckler's widow never retained a lawyer or filed suit against Conrail. Therefore, Bethlehem maintains that there was no claim, action or legal proceeding arising, in whole or in part, from a violation of either section 3 or 7 of the agreement. However, Conrail states that Bethlehem admitted that a claim was made in its answer as follows:

> *PARAGRAPH NO. 6:* On November 23, 1990, and at the Bethlehem facility, while plaintiff was in the process of spotting railroad cars inside the Bethlehem plant, an employee of the plaintiff, Gregory Seckler, was fatally injured. As a result of said incident, the estate of the employee made a claim for injuries and damages sustained in the accident.

*ANSWER:* Bethlehem admits the allegations contained in paragraph six. (R. 24). Bethlehem responded to this assertion by maintaining that there was no claim, action, or legal proceeding arising, in whole or in part, from a violation of either section 3 or 7 of the agreement.

Neither party mentions any violation of section 3 of the agreement. Bethlehem insists that it did not violate section 7. The minimum clearances were, in fact, changed by Conrail, when Conrail and Bethlehem filed their joint petition with the Indiana Public Service Commission. The Commission granted the petition and the permissible lateral clearance was reduced from. eight feet to six feet. As part of its accident investigation, Conrail measured the clearances and found them all to be greater than the required six feet. Therefore, Bethlehem argues that there was no violation of section 7. Because Bethlehem admitted to the allegations contained in paragraph six of Conrail's complaint does not mean that Bethlehem admitted to violating either section 3 or 7 of the agreement. Consequently, we find that Bethlehem raises genuine issues of material fact that it did not violate either of these sections.

■ Bethlehem also contends that there has been no claim, action or legal proceeding under the Federal Employers' Liability Act (FELA). The plain language of this subsection requires Conrail to prove that Conrail "failed to correct or guard against an unsafe condition," and that the alleged unsafe condition "resulted in whole or in part from any act or omission" of Bethlehem. There has been no allegation that the accident occurred because Conrail "failed to correct or guard against an unsafe condition."

■ Conrail responds by stating that Seckler was covered under FELA. Under FELA, the railroad is liable to its employees if its negligence "played any part, however small, in the injury or death which is the subject of the suit." *Rogers v. Mis-*

*souri Pac. R.R. Co.,* 352 U.S. 500, 508, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). Conrail believes that Bethlehem has unambiguously agreed to indemnify the railroad for any claim brought under FELA. We disagree.

■ FELA is not a no-fault statute and damages are not owed because an employee is injured. The United States Supreme Court has held that although FELA is to be liberally construed, it does not mean that it is a workers' compensation statute. *Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, 543, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994). The Supreme Court has insisted that FELA "does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur." *Id.* (quoting *Ellis v. Union Pacific R.R. Co.,* 329 U.S. 649, 653, 67 S.Ct. 598, 91 L.Ed. 572 (1947)).

We find that section 8(b)(iv)(b) of the agreement requires the following: 1) there must be a claim, action or legal proceeding under FELA; 2) Conrail "failed to correct or guard against an unsafe condition;" and 3) the alleged unsafe condition "resulted in whole or in part from any act or omission" of Bethlehem. There are factual disputes concerning whether these requirements have been met. Consequently, we find that the trial court's grant of Conrail's motion for partial summary judgment was improper.

## II. *Reversal of Summary Judgment*

■ Bethlehem argues that the overwhelming weight of the undisputed evidence and the findings of Conrail's own official investigation establishes that Conrail and its employees were solely responsible for the accident. Thus, Bethlehem contends that this court should reverse the trial court's grant of Conrail's motion for partial summary judgment and award judgment in favor of Bethlehem as a matter of law. Our supreme court has held that, where the evidence is undisputed and there are no unresolved facts to be deter-

mined, it is proper for the appellate court to determine as a matter of law that summary judgment was rendered for the wrong party. *Indiana Dept. of Ins. v. Zenith Re–Insurance Co., Ltd.*, 596 N.E.2d 228, 229 (Ind.1992).

As seen above, we have found that there are genuine issues of material fact that exist and are in dispute. Summary judgment should be granted only if such evidence shows that there is no genuine issue of material fact and that judgment is warranted as a matter of law. *Miller*, 727 N.E.2d at 491. Consequently, it would be improper to award judgment in favor of Bethlehem as a matter of law.

### CONCLUSION

Based on the foregoing, we conclude that the trial court erred in granting Conrail's motion for partial summary judgment.

Reversed and remanded for new trial on the issue of liability.

BARNES, J., and BAILEY, J., concur.