**NORTHERN INDIANA COMMUTER TRANSPORTATION DISTRICT, Appellant–Plaintiff,**

v.

**CHICAGO SOUTHSHORE AND SOUTH BEND RAILROAD, Appellees–Defendants.**

No. 46A05–0003–CV–103.

Court of Appeals of Indiana.

Feb. 7, 2001.

Michael C. Harris, Harris Welsh & Lukmann, Chesterton, IN, Attorney for Appellant.

Peter J. Rusthoven, Bart A. Karwath, Barnes & Thornburg, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BAILEY, Judge

### Case Summary

Northern Indiana Commuter Transportation District ("NICTD") appeals the trial court's refusal to overturn an arbitration panel's ruling determining the extent of a maintenance-of-way fee ("MOW fee") payable by Chicago SouthShore and South Bend Railroad ("SouthShore") to NICTD pursuant to an agreement between the parties. We reverse.

### Issue

The issue before us is whether the arbitration panel's interpretation of the MOW Fee adjustment provision in the parties's agreement was erroneous.[1]

### Facts and Procedural History

NICTD is an Indiana municipal corporation formed pursuant to Indiana Code sections 8–5–15–3 through 8–5–15–10 for the purpose of managing funds related to commuter rail service in certain counties in northern Indiana. NICTD owns railroad tracks between Chicago, Illinois and South Bend, Indiana known as the South Shore Line. The Chicago South Shore and South Bend Railroad ("Old South Shore"), an entity unrelated to SouthShore, operated freight and passenger service along the South Shore Line until declaring bankruptcy in April 1989.

On September 27, 1989, NICTD and the Anacostia and Pacific Company, Inc. ("A and P") entered into a Memorandum Agreement ("Agreement"), pursuant to which Southshore Acquisition Company ("SSA"), an entity created by A and P,

---

1. Because our resolution of this issue is dispositive, we do not address other issues raised by the parties, including NICTD's assertion that the arbitration award violates public policy, and that the trial court erroneously struck certain affidavits.

would purchase the assets of Old South Shore, and sell Old South Shore's passenger transportation assets and operations to NICTD. Under the Agreement, SSA retained Old South Shore's freight assets and operations.

The parties agreed that NICTD would be responsible for maintaining the South Shore Line. In exchange, SSA agreed to pay a portion of the maintenance costs, including the MOW fee. The MOW fee provision states:

### Section 3.2 *MOW Fee*

(a) SSA shall pay NICTD an annual fee representing its portion of expenditures made for dispatching, maintenance and improvements of Joint Assets, and other costs associated with SSA's use of Joint Assets ("MOW Fee"). *The MOW Fee is an amount determined by multiplying Gross Revenues (as defined in Section 12.1(vi)) by 12 percent.* Notwithstanding the foregoing, the parties stipulate that the MOW Fee for calendar year 1990 will be $1,700,000 (reduced pro rata by day, if Closing occurs during 1990). *Thereafter, the MOW Fee will be calculated by multiplying Gross Revenues for the prior year by 12 percent as provided above.* Thus, for example, the 1991 MOW Fee shall be 12 percent times SSA Gross Revenues for 1990 (such Gross Revenues to be annualized if the Closing Date occurs in 1990).

Upon any Sale of control by SSA (as defined in Section 9.8(b)), NICTD shall have the option of requiring the purchaser to adopt the Alternative MOW Fee described in the Letter Agreement. *Commencing in 1992 and every third year thereafter, the parties shall consult to determine whether the MOW Fee adequately compensates NICTD for inflation based increases from its deemed initial cost for services provided pursuant to Section 3.1 hereof, and shall make appropriate adjustments on the basis of such determination.* NICTD's initial cost for purposes hereof shall be deemed to be $1,700,000 divided by the number of revenue cars during the 1988 calendar year (such number of revenue cars to be determined by agreement of the parties based on audits conducted after the date hereof). The term "revenue car" shall have the meaning set forth in the Letter Agreement.

(R. 2401, emphasis added.) After entering into the Agreement, SouthShore assumed the rights and obligations of A and P and SSA under the agreement, and began operating freight service along the South Shore Line. NICTD began operating passenger service along the line and proceeded to discharge its obligation to maintain the railroad.

During 1992, a dispute arose between NICTD and SouthShore regarding the adequacy of the MOW Fee. The parties were unable to resolve their differences, and in 1993, NICTD demanded arbitration pursuant to the Agreement. Although the Agreement provided that Indiana law would govern their disputes and that arbitration would take place in Indiana, the parties agreed to hold arbitration in Chicago, the home of each of the three arbitrators they selected.

On January 24, 1994, NICTD filed its Petition for Partial Summary Judgment, asking the arbitrators to rule that Section 3.2 of the Agreement unambiguously required the parties to consult, in 1992 and every third year thereafter, to determine if the MOW Fee adequately compensated NICTD, and to make appropriate adjustments to the fee on the basis of such determination. SouthShore took the position that the Agreement unambiguously set the MOW Fee at 12% of SouthShore's gross revenues, and that the portion of the MOW Fee provision relating to adjustment of the MOW Fee applied only in the event that SouthShore sold its assets and operations. SouthShore alternatively asked the arbitrators to reform the MOW Fee provision, claiming that it had mistakenly agreed to the language in the MOW Fee provision relating to the periodic adjustment of the MOW Fee. Following a pre-

liminary hearing on April 25, 1994, the arbitrators elected to withhold action on NICTD's petition until the evidentiary hearing was complete.

The arbitrators held evidentiary hearings in July and August 1994. On August 11, 1994, the arbitrators, in a two to one decision, ruled in favor of SouthShore. The part of the decision pertinent here states:

> (a) The annual MOW Fee shall be Twelve Percent[ ] (12%) of Gross Revenues, as set forth in the first paragraph of Section 3.2(a) of the Memorandum Agreement Between the Northern Indiana Commuter Transportation District and Anacostia & Pacific Company, Inc., dated September 27, 1989
>
> (b) The entire second paragraph of Section 3.2(a) applies only in the event of a sale of control as set forth therein, and does not otherwise affect the calculation of the MOW Fee in 1(a) above.

(R. 450.) [2]

On September 9, 1994, NICTD filed a declaratory judgment action in the Superior Court of LaPorte County, Indiana challenging the arbitration decision pursuant to the Agreement, which stipulated that while "[t]he decision of a majority of the three arbitrators shall be final and conclusive between the parties," the parties could "institute an action at law within the State of Indiana" to review the award if either side claimed "that the arbitrators' decision is based upon an error of law." The parties agreed that Indiana law would be controlling. SouthShore moved to dismiss NICTD's complaint for lack of subject matter jurisdiction, arguing that the courts of Illinois had exclusive jurisdiction to review the arbitration because NICTD agreed to waive the Agreement's provision requiring that all arbitration proceedings take place in Indiana.

On October 28, 1994, SouthShore filed an application to confirm the arbitration award in the Circuit Court of Cook County, Illinois. On December 15, 1994, NICTD filed a motion in the Illinois court contesting that court's jurisdiction. The Indiana trial court granted SouthShore's motion to dismiss on February 22, 1995, agreeing that Illinois had jurisdiction. The Illinois trial court subsequently denied NICTD's jurisdictional contest, and confirmed the arbitration award on December 20, 1995.

On February 20, 1996, this court reversed the LaPorte County Superior Court's dismissal of NICTD's case, concluding that Indiana had jurisdiction over the arbitration pursuant to the Agreement. *Northern Indiana Commuter Transp. Dist. v. Chicago SouthShore and South Bend R.R.*, 661 N.E.2d 842, 846 (Ind.Ct. App.1996). We also addressed, in the interests of judicial economy, the merits of NICTD's claim, and concluded that the interpretation of the MOW Fee favored by SouthShore and approved by the arbitrators was erroneous. *Id.* at 846–848. In particular, we held that the MOW Fee adjustment clause applied regardless of whether SouthShore sold its operations, and we remanded the matter for further arbitration to determine the proper amount of the MOW Fee. *Id.*

On March 21, 1996, SouthShore petitioned this court for rehearing, claiming for the first time that the Illinois trial court's December 20, 1995 confirmation of the arbitration award should be given preclusive effect under the Full Faith and Credit Clause of the United States Constitution, and also arguing that we denied SouthShore due process of law by addressing the merits of NICTD's complaint. We denied SouthShore's petition. *Northern Indiana Commuter Transp. Dist. v. Chicago Southshore and South Bend R.R.*, 666 N.E.2d 447 (Ind.Ct.App.1996). NICTD

---

**2.** The arbitrators came to a unanimous decision on other questions not at issue in this appeal.

then filed its own motion in the Illinois trial court, arguing that the Full Faith and Credit Clause required Illinois to defer to the decision of this court. The Illinois court denied that motion on July 24, 1996. On June 8, 1997, the Illinois Court of Appeals affirmed the Illinois trial court's decision to exercise jurisdiction and confirm the arbitration award. *Chicago SouthShore and South Bend R.R. v. Northern Indiana Commuter Transp. Dist.*, 289 Ill.App.3d 533, 224 Ill.Dec. 595, 682 N.E.2d 156 (1997). The Illinois Court of Appeals certified the matter for review by the Illinois Supreme Court.

The Indiana Supreme Court subsequently accepted transfer and vacated this court's earlier opinions. *Northern Indiana Commuter Transp. Dist. v. Chicago SouthShore and South Bend Railroad*, 685 N.E.2d 680 (Ind.1997). The supreme court agreed that Indiana had jurisdiction of this matter, but noted that the Illinois Trial court, which had issued its ruling on December 20, 1995, was the first court to assert jurisdiction, and the supreme court therefore stayed all Indiana proceedings pending resolution of the Illinois litigation. On November 30, 1998, the Supreme Court of Illinois held that Indiana had jurisdiction over NICTD's complaint, and vacated the judgment of the Illinois trial court. *Chicago Southshore and South Bend R.R. v. Northern Indiana Commuter Transp. Dist.*, 184 Ill.2d 151, 234 Ill.Dec. 395, 703 N.E.2d 7 (1998).

Proceedings in the LaPorte County Superior Court resumed when SouthShore filed its answer to NICTD's declaratory judgment action on January 29, 1999. NICTD filed its Motion for Summary Judgment on April 14, 1999, claiming that the arbitrators erred by concluding that the portion of the MOW Fee provision relating to adjustment of the fee applied

only in the event that SouthShore sold its assets and operations, and contending that Section 3.2 of the Agreement unambiguously required the parties to consult, in 1992 and every third year thereafter, to determine if the MOW Fee adequately compensated NICTD, and to make appropriate adjustments to the fee on the basis of such determination. The case was transferred to the LaPorte County Circuit Court on April 16, 1999. On July 26, 1999, SouthShore filed a motion seeking confirmation of the arbitration award, and a brief in opposition to NICTD's motion for summary judgment. The trial court heard argument on these motions on December 1, 1999, and issued its 55 page order containing findings of fact and conclusions of law on February 23, 2000. The trial court denied NICTD's motion for summary judgment and granted SouthShore's motion to confirm the arbitration award. It is from this order that NICTD appeals.

## Discussion and Decision

### Standard of Review

■ In *Bopp v. Brames*, 677 N.E.2d 629 (Ind.Ct.App.1997), we noted that because the purpose of arbitration is to afford parties the opportunity to reach a final disposition of differences in an easier, more expeditious manner than by litigation, judicial review of arbitration awards is very narrow in scope. *Id.* at 631. Typically, an award will be set aside only when the party seeking to vacate the award proves one of the grounds for vacation set forth in the Uniform Arbitration Act.[3] *Id.* We also noted in *Bopp* that arbitration arises through contract, and parties are free to define the nature and scope of the questions which may be arbitrated and the extent to which an arbitrator's decision must conform to general principles of law. *Id.* at 632 (citing *School City of East Chicago v. East Chicago Fed'n of Teachers, Local No. 511*, 422 N.E.2d 656, 662 (Ind.

---

**3.** IND.CODE §§ 34–57–2–1 to 34–57–2–22. The statutory grounds for vacating arbitration awards are set forth at IND.CODE §§ 34–57–2–13, and include, among other things, (1) cor-

ruption or fraud; (2) partiality or corruption of an arbitrator, or other misconduct; and (3) an award which exceeds the arbitrator's authority.

Ct.App.1981)). Similarly, as SouthShore and NICTD agree, parties may contractually agree to expand the subjects for judicial review beyond those set forth in the Uniform Arbitration Act. *See Hayden v. Allstate Insurance Co.*, 5 F.Supp.2d 649, 653 (N.D.Ind.1998) (applying Indiana law and noting that an agreement to extra-statutory *de novo* judicial review of award would be honored).

In this case, the parties agreed that if either party felt that an arbitration decision was "based upon an error of law," that party could seek judicial review of the alleged legal error in an Indiana court. (R. 2421.) NICTD sought judicial review of what it claimed to be the arbitrators's erroneous interpretation of the MOW Fee adjustment provision. NICTD asserts, and SouthShore concedes, that the arbitration panel's allegedly erroneous application of substantive contract law to interpret the provision is a proper subject for judicial review under the Agreement. The trial court was accordingly empowered to review this legal question.[4] Thus, because construction of the terms of a written contract is a pure question of law for the court, our standard of review is *de novo. Allstate Ins. Co. v. Bradtmueller*, 715 N.E.2d 993, 996 (Ind.Ct.App.1999).

### Analysis

NICTD argues that the plain language of the MOW Fee unambiguously required the parties to consult, in 1992 and every third year thereafter, to determine if the MOW Fee adequately compensated NICTD, and to make appropriate adjustments to the fee on the basis of such determination. SouthShore makes no effort to explain how the plain language of the MOW Fee provision supports the arbitrators's conclusion that the MOW Fee adjustment provision only applied in the event that SouthShore sold control of its assets and operations. Rather, SouthShore seeks to avoid our review of the proper interpretation of the MOW Fee by asserting that the arbitrators's determination should be affirmed to the extent that it may have rested upon proper and largely unreviewable factual determinations pertinent either to resolving ambiguities in the MOW Fee provision, or to reforming the provision to accurately reflect the true intent of the parties.

■ First, the arbitration award contains no indication whatsoever that the arbitrators intended to reform the contract to suit SouthShore's interpretation. Rather, the terms of the decision are to the contrary. The pertinent portion of the arbitration panel's decision states:

> (b) The entire second paragraph of Section 3.2(a) applies only in the event of sale of control *as set forth therein*, and does not otherwise affect the calculation of the MOW Fee in 1(a) above.

(R. 450, emphasis added). By explaining that the MOW Fee provision applied only in the event of SouthShore's sale of control "*as set forth therein*," the arbitrators plainly indicated that the terms of the provision themselves dictated their interpretation.[5] There is simply no basis upon which to conclude that the arbitrators reformed the agreement.

■ Further, while the trier of fact must ascertain extrinsic facts necessary to interpret a contract when reasonable persons would find the contract susceptible to

---

4. The trial court was not, however, empowered to find facts. That task was entrusted by the parties to the arbitration panel pursuant to the Agreement, which stated that in "any ... action at law" for review of an arbitration award, "the parties shall stipulate the facts to be as set forth by the arbitrators." (R. 2421.) Thus, to the extent that the trial court found specific facts based upon the arbitration record, it erred.

5. NICTD also notes that while SouthShore asked the arbitrators to reform the agreement in pleadings filed before the arbitration, SouthShore did not directly discuss its reformation claim at any time during the arbitration hearing, and did not specifically ask for such relief during its opening or closing arguments. SouthShore does not dispute this contention.

multiple interpretations that cannot be resolved within the four corners of the contract, *Allstate Ins. Co.,* 715 N.E.2d at 996, we do not find the contract language at issue here to be at all ambiguous. It is true that SouthShore and NICTD fundamentally disagree over the meaning of the MOW Fee provision. Nevertheless, a contract is not ambiguous simply because a controversy exists where each party favors a different interpretation. *Bastin v. First Indiana Bank,* 694 N.E.2d 740, 746 (Ind. Ct.App.1998). When the language of a contract is unambiguous, the intent of the parties is determined from the four corners of the instrument. *Allstate Ins. Co.,* 715 N.E.2d at 996.

The contract language at issue here provides:

> Upon any Sale of control by SSA (as defined in Section 9.8(b)), NICTD shall have the option of requiring the purchaser to adopt the Alternative MOW Fee described in the Letter Agreement. Commencing in 1992 and every third year thereafter, the parties shall consult to determine whether the MOW Fee adequately compensates NICTD for inflation based increases from its deemed initial cost for services provided pursuant to Section 3.1 hereof, and shall make appropriate adjustments on the basis of such determination. NICTD's initial cost for purposes hereof shall be deemed to be $1,700,000 divided by the number of revenue cars during the 1988 calendar year (such number of revenue cars to be determined by agreement of the parties based on audits conducted after the date hereof).

(R. 2401.) SouthShore contended below that the first sentence of this paragraph modified the second sentence, rendering the adjustment procedure provided in the second sentence applicable only in the event of SouthShore's sale of control of its operations. This interpretation is contrary to the plain language of the document. The second sentence says that in 1992 and in every third year thereafter, the parties must consult to determine whether the MOW Fee adequately compensated NICTD for certain inflation based increases from its deemed initial cost for services as provided in section 3.1 of the Agreement. The second sentence goes on to say that the parties must make appropriate adjustments on the basis of such determinations. There is no support in the clear language of this provision for SouthShore's earlier contention that the second sentence is to apply only when SouthShore sold control of its operations. Indeed, the text of the provision suggests the opposite. SouthShore and NICTD, who refer to themselves as "party" and to the both of them as "the parties" throughout the Agreement, used the term "the parties" to identify those who were to consult with regard to the adequacy of the MOW Fee. They did not specify that some successor entity to SouthShore would be required to confer with regard to the adequacy of the MOW Fee. In any event, it appears unlikely that an entity purchasing SouthShore's operations would be bound by the MOW Fee adjustment clause absent privity. *See Angell Enterprises, Inc. v. Abram & Hawkins Excavating Co., Inc.,* 643 N.E.2d 362, 365 (Ind.Ct.App.1994).

In sum, the plain language of the MOW Fee adjustment clause clearly states that NICTD and SouthShore must consult, in 1992 and in every third year thereafter, to assess the adequacy of the MOW Fee, and that the MOW Fee must be adjusted as necessary. Thus, to the extent that the arbitration panel looked to extrinsic evidence to reach a contrary interpretation of the MOW Fee provision, as SouthShore suggests, the arbitrators erred. As noted above, however, there is no indication in the arbitrators's award that the arbitration panel did anything but interpret the plain and unambiguous language of the contract. Their interpretation is incorrect and constitutes an error of law within the meaning of the Agreement, and the trial court erred in concluding otherwise. We therefore vacate the trial court's order, vacate the por-

tion of the arbitration award that relates to the erroneous interpretation of the MOW Fee adjustment clause, and remand this case to the trial court with instructions to submit the case to arbitration for purposes of determining the MOW Fee if the parties are unable to agree on the proper fee pursuant to the Agreement.

Reversed and remanded with instructions.

SHARPNACK, C.J., and RILEY, J., concur.