**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 22 2014, 9:24 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL RILEY**
Rensselaer, Indiana

ATTORNEY FOR APPELLEE:

**SCOTT C. QUICK**
Quick Law Office
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SPRIT FOOD MART, INC., | ) | |
| KEYSTONE MARATHON, INC., and | ) | |
| FOUR S INVESTMENT GROUP, INC., | ) | |
| | ) | |
| Appellant-Plaintiffs/Counterclaim Defendants Below, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1308-PL-732 |
| | ) | |
| RS PETROLEUM, INC., | ) | |
| | ) | |
| Appellee-Defendant/Counterclaim Plaintiff Below. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Thomas J. Carroll, Judge
Cause No. 49D06-1306-PL-24674

**December 22, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

In this interlocutory appeal as of right, Sprit Food Mart, Inc. ("Sprit") appeals the trial court's Findings of Fact, Conclusions of Law, and Final Partial Judgment in favor of RS Petroleum, Inc. ("RS Petroleum").[1] Sprit raises three issues which we revise and restate as:

I.     Whether the court erred in concluding that Sprit did not comply with the renewal provision contained in a lease; and

II.    Whether the court erred in determining that there was no year to year or month to month tenancy between Sprit and RS Petroleum.

We affirm.

FACTS AND PROCEDURAL HISTORY

The facts most favorable to the trial court's judgment reveal that on June 19, 2008, an asset purchase agreement (the "Purchase Agreement") was entered into between Four S Investment Group, Inc. ("Four S"), which includes the business partners Salim Siddiqui, Shahid Hussain, Shamin Hadi, and Sohail Khan, and Keystone Marathon, Inc. ("Keystone") as purchasers and RS Petroleum as the seller. Siddiqui signed the Purchase Agreement as the President of both Four S and Keystone, and Sohail Shakir signed as President of RS Petroleum. The Purchase Agreement stated that Four S agreed to purchase certain real estate and improvements thereon located at 3402 North Keystone Avenue, Indianapolis, Indiana, including a gas station and convenience store (the "Gas

---

[1] Keystone Marathon, Inc. and Four S Investment Group, Inc. are also listed in the action as appealing parties in the notice of appeal and are plaintiffs / counterclaim defendants below. However, the motion for temporary restraining order from which the appealed order stems was filed solely by Sprit and directly concerns only Sprit.

Station"), which would take place "within twenty one (21) days after satisfaction or waiver of the conditions precedent set forth in Section 4 hereof or as such date as may be mutually agreed by the parties . . . ." Appellant's Appendix at 29. Keystone agreed to purchase certain business assets, including business equipment and inventory, within thirty days of the execution of the Purchase Agreement. The Purchase Agreement also stated that Keystone would take possession of the Gas Station and operate the business as of the business asset closing date and lease the Gas Station from RS Petroleum pursuant to a separate lease agreement (the "Lease").[2] The Lease, signed the same day by Shakir as President of RS Petroleum as Lessor and Siddiqui as President of Keystone as Lessee, contained the following provisions:

>   (a) **<u>TERM OF LEASE</u>:** Beginning July 1, 2008, and continuing thereafter for a period of Sixty (60) months, expiring on June 30, 2013. Regardless of the actual date of execution of this document, the Effective Date of the Lease shall be July 1, 2008. Provided Lessee is not in default, Lessor shall have three (3) options to renew this Lease, each for a period of five (5) years. To exercise a renewal option Lessee shall give written notice to Lessor at least 90 days prior to the expiration of the term. If Lessee fails to exercise any renewal option on or before such date, such option and all succeeding options shall no longer exist. All of the terms and conditions of this Lease shall apply during the renewal periods.

>   (b) **<u>RENT</u>:** Rental per month for the leased premises shall be the sum of **Six Thousand Five Hundred Four Dollars ($6,504.00)** payable monthly in advance on the first (1st) day of the month. Five percent (5%) of the amount due as rent shall be paid if the monthly rent payment is not received by **Lessor** or its designee on or before the fifth day of each month for which it is due thereunder. The monthly rent shall be paid either

---

[2] Counsel for Sprit at a hearing on July 9, 2013, stated that "there were environmental issues with the property, and while the environmental issues were to be resolved the parties entered in to a lease . . . . So the idea was is [sic] that the lease would be in place until they got to the point to where they could close the purchase agreement." Supplemental Transcript at 14.

3

directly to **Lessor** at 14098 Marilyn Road, Noblesville, Indiana 46060, or to such other address as **Lessor** shall notify **Lessee** in writing.

* * * * *

(x)     **NOTICES:**  All notices to be given hereunder by either party shall be in writing and given by personal delivery to the **Lessor** or the **Lessee**, or shall be sent by first class, registered or certified mail addressed to the party intended to be notified at the post office address for such party last known to the party giving such notice, and notice given as aforesaid shall be a sufficient service thereof and shall be deemed given as of the date when deposited in any post office, or in any post office box regularly maintained by the Federal Government.

Id. at 12, 17.  Both the Purchase Agreement and the Lease were drafted by Attorney Andrew Sheff, who represented Four S and Keystone in the transaction, along with Attorney Herb Jensen representing RS Petroleum, who "participated in putting the final agreement together for the parties."[3]  Transcript at 174.

Although the Lease stated that rent should be sent to 14098 Marilyn Road, Noblesville, Indiana 46060 (the "Marilyn Address"), Keystone by Siddiqui paid rent by direct deposit into an account of RS Petroleum or Shakir.  In 2009, Siddiqui sold his shares of Keystone to a friend named Saadali.  In June 2011, Saadali, on behalf of Keystone, executed an Assignment and Assumption of Lease (the "Assignment") assigning the lease to Sprit, with Siddiqui signing as the President of Sprit.

Also, in June of 2010 Shakir sold the property located at the Marilyn Address to the City of Noblesville, the City turned the property into a road, and the Marilyn Address ceased to exist as a legal address.

---

[3] Attorney Sheff has also represented Shakir and assisted Shakir in selling his office property, as discussed below, to the City of Noblesville.

In April of 2013, following the expiration of the Lease's renewal provision, Shakir called Akhtar Hassan, who was a mutual friend and business associate of both Shakir and the Four S partners, and stated that "the lease is over now do they want to purchase, if they want to extend the lease the lease is going to be much more expensive and Akhtar became a mediator" at a meeting between Shakir and Siddiqui, Shahid Hussain, and Sohail Khan at a restaurant (the "April Meeting").[4]  Id. at 74.  The purpose of the April Meeting was "to figure out what [the] new lease payment will be and if they buy the store what would be the value of that store" but there were no resolutions at the meeting, and at the meeting "[t]here were several threats issued to" Shakir, who walked out of it.  Id. at 78.  Neither Siddiqui nor the other Four S partners in attendance at the meeting stated that they had sent notification to RS Petroleum or Shakir expressing their intent to renew the Lease and instead "they were asking how much more rent . . . ."[5]  Id. at 76.

On May 2, 2013, Attorney Matthew King sent a letter to Shakir on behalf of Four S and specifically Siddiqui regarding their "[e]xercise of option to renew Lease for" the Gas Station, directing the letter to the Marilyn Address and to Attorney Carina de la Torre, from whom Attorney King had "previously received correspondence on RS Petroleum's behalf regarding [the] Lease . . . ."  Appellant's Appendix at 48.  The letter stated that Siddiqui had sent a letter to RS Petroleum on March 2, 2013, "expressing his intention to exercise the option to renew the Lease . . . .  However, I have been informed

---

[4] Four S partner Shamin Hadi was not in attendance at the meeting.

[5] As noted below, Siddiqui disputes the fact that the issue of whether he sent a renewal notice to RS Petroleum or Shakir was raised at the meeting.

that you may believe my clients have somehow been deficient in giving notice of their intentions to renew the Lease." Id. Attorney King enclosed a copy of the letter allegedly sent by Siddiqui on March 2, 2013 (the "Alleged Renewal"), which was addressed to the Marilyn Address and which stated: "Please accept the following notice concerning the renewal option for the lease at the [Gas Station]." Id. at 50.

On May 7, 2013, Attorney King wrote another letter to Shakir and RS Petroleum to the address of 8005 E 42nd Street, Indianapolis, IN 46224, and Attorney Herb Jensen as Registered Agent for RS Petroleum to his office address, on behalf of Four S and Siddiqui, wherein he stated:

> Please see the enclosed letter, and enclosures, which I mailed on May 2, 2013, to the address for RS Petroleum given in the Lease Agreement: 14098 Marilyn Road, Noblesville, IN 46060. These items were returned to me today with a "RETURN TO SENDER, NO SUCH NUMBER" label. My clients and I have not received notice from you of a change in address for RS Petroleum, Inc. Nonetheless, after conducting our own search, we identified your addresses listed above, and are re-sending this letter to those addresses.

Id. at 46. After receiving the May 7, 2013 letter, RS Petroleum "steadfastly maintained that the [L]ease had expired . . . ." Transcript at 75.

On June 14, 2013, Four S, Keystone, and Sprit (the "Plaintiffs") filed a complaint against RS Petroleum alleging Count I, breach of contract asking for specific performance that RS Petroleum be required to sell the Gas Station pursuant to the Purchase Agreement; Count II, breach of lease due to RS Petroleum's refusal "to recognize Sprit's" Alleged Renewal; and Count III, request for declaratory judgment that

6

the Plaintiffs "properly exercised their option to extend the term of the Lease . . . ." Appellee's Appendix at 13-14. On June 25, 2013, Sprit filed a motion for temporary restraining order stating that the "Lease, if not renewed, will terminate under its terms on June 30, 2013" and asking that the court enter a temporary restraining order "requiring [RS Petroleum] to recognize and accept [Sprit's] renewal of the Lease, enjoining Landlord from evicting [Sprit] from the Premises after June 30, 2013 and until this matter is resolved, and permitting [Sprit] to continue to Lease the Premises after that date" pursuant to the Lease's terms. Id. at 63, 65. On July 8, 2013, RS Petroleum filed its answer, affirmative defenses, and counterclaim for declaratory judgment, eviction, and damages. In its counterclaim, RS Petroleum raised Count I asking for declaratory judgment that the Plaintiffs are in trespass; Count II, breach of lease;[6] and Count III, breach of agreement alleging that the Plaintiffs were the first to breach the Purchase Agreement.

On July 9, 2013, the court held a hearing on the motion for temporary restraining order in which Sprit appeared by counsel and RS Petroleum appeared by counsel and in person by Shakir. At the hearing, Shakir told the court that he did not want to be involved with the Plaintiffs anymore because "[t]hey're doing illegal stuff in there, they're selling – they sold almost half-million dollars a month on EBT, you can check those records." Supplemental Transcript at 22. The court asked Shakir if he had received

---

[6] Count II specifically alleged that A) Keystone "used the EBT Account [at the Gas Station] in violation of the USDA SNAP regulations, in contravention of Sections E, G, and Q of the Lease," and B) the Assignment to Sprit was unauthorized by Shakir and RS Petroleum. Appellee's Appendix at 88-90.

7

a rent payment for the month of July, Shakir replied affirmatively, and the court decided "to let things ride," noting that it wanted to dispense with the case "this month, which means we've got 21 days, three weeks." Id. at 33-34. The court set a hearing date of July 25, 2013.

On July 25, 2013, the court held a hearing in which Siddiqui testified that he sent the Alleged Renewal on March 4, 2013, to the Marilyn Address by dropping the letter in the blue U.S. Mailbox located in front of the Gas Station. Siddiqui indicated that he sent the letter to the Marilyn Address because "[i]t's in my lease" and he did not know of any other address for RS Petroleum and had not received written notice that the address for RS Petroleum had changed. Transcript at 19. Siddiqui testified that he listed the Gas Station on the letter's envelope as a return address, that he never received the letter back marked "return to sender," and that he believed Shakir had received it. Id. at 21. He also testified that at the April Meeting, Shakir told Siddiqui that the Lease had expired, and Siddiqui told Shakir that this was incorrect and that he had sent the Alleged Renewal on March 4, 2013.

On cross-examination, counsel for RS Petroleum asked Siddiqui about other addresses for RS Petroleum he had access to, including the address for Attorney Herb Jensen, which was contained on the Purchase Agreement, as well as the address for Attorney Carina de la Torre, noting that she had represented RS Petroleum in 2012 in an action for eviction and damages alleging that the Plaintiffs had breached the Purchase Agreement and Lease. He was also presented with the Affidavit of Nadeem Muhammad,

8

whom Siddiqui testified he had known for about three or four years and who was a manager of a restaurant owned by Siddiqui. Siddiqui denied the veracity of Muhammad's affidavit. Siddiqui was then asked if he or his associates had in the past twenty-four hours "bombarded [Muhammad] with phone calls and texts and threats," to which counsel for Sprit objected. Id. at 31. The court stated that "if any of this is true it's a very serious thing for everyone," stated that it would issue a bench warrant for Muhammad if he did not voluntarily come to court, and took the admissibility of the affidavit under advisement. Id. at 31-32.

Sprit called Moin Akhtar, who manages the Gas Station and testified that he witnessed Siddiqui place the Alleged Renewal in the mail on March 4, 2013, noting specifically that when Akhtar offered to mail the letter Siddiqui replied: "[N]o it's very important letter, and this is the letter Extension of Lease which I want to send it, so I will send, okay, I gave him envelope and a postage stamp. And I saw that letter, because, um, we went together outside . . . ." Id. at 52-53. Akhtar acknowledged on cross-examination that he is the brother of two of the Four S business partners, Shahid Hussain and Shamin Hadi.

Shakir testified that he did not see the Alleged Renewal until his counsel showed him between May 7th and May 9th of 2013. When asked about Muhammad, Shakir testified that Muhammad called him the night before the hearing and stated that he was receiving threats from Kahn, Hussain, Siddiqui, Hadi, and Moin Akhtar, and that Muhammad was worried about his family. On cross-examination, Shakir acknowledged

9

that he continued to receive rent payments after finding out about the Assignment, which he claimed contained a forged signature of his, and that he did so rather than reject the payments because Attorney de la Torre "advised [him] to stay quiet until the lease gets over." Id. at 93. He also admitted that he did not send written notice that his address had changed and explained that "[t]hey've been to my home a couple of times, they had dinner at my home they know very well where I live." Id. at 94-95.

Following Shakir's testimony, the court heard the testimony of Akhtar Hassan, Sohail Khan, Shahid Hussain, Shamin Hadi, and Attorney Andrew Sheff. After a recess, Nadeem Muhammad appeared in court and apologized for being tardy, explaining that he had overslept and that his cell phone battery died. At the outset of his testimony, Muhammad indicated that the statements in his affidavit were not completely accurate and that when the affidavit was being drafted he was upset with the Four S partners because he believed that they owed him $65,000. Muhammad testified that the affidavit was "not a hundred percent" true, but that "part of it" was true. Id. at 193. He testified that he did have a phone conversation with Siddiqui the week of June 2, 2013, in which Siddiqui stated that Sohail Khan "may have forgotten about sending" the Alleged Renewal.[7] Id. at 194. Muhammad also indicated that he heard from members of Four S

---

[7] Muhammad's affidavit, which was taken under advisement during Siddiqui's testimony but never entered into evidence, stated the following as Paragraph 4:

> I am in in regular phone contact with [] Siddiqui . . . for both personal and business reasons. The week of June 2, 2013 through June 8, 2013 . . . I spoke on the phone with Siddiqui for an extended period regarding a number of topics. In that phone conversation, as he discussed the litigation with RS Petroleum and Mr. Shakir, he

the day before the hearing who assured Muhammad that they were "interested in settling" his claim that he is owed $65,000. Id. at 195. Muhammad testified that he did not "really" feel intimidated by Four S but that he "may have said that to [RS Petroleum's counsel], but really not." Id. at 198. He further testified that Shakir loaned him $5,000 the day after he signed the affidavit.

At the end of the hearing, the court stated the following:

> Okay, very interesting case. . . . I am going to find that there is no lease. The issue of notification, although interesting, and if pressed to make a decision on that issue I would find that the letter was not sent, I don't believe Mr. Siddiqui, but I don't even have to get to that point. I think under the terms of the lease, which I find was poorly drafted, and maybe that's a result of both sides using the same lawyer and all of that. . . . Had the lease been drafted properly there would have been a provision in there on the renewal expressly stating where the option to renew was to [be] mailed, instead we've got a lease that's got some reference to where the rent checks were to go and as it turns out that was ignored almost from the start because they went directly into the bank. That has nothing to do with where the renewal should have been sent. The renewal should have been sent so that he got notice of it, which is the reason for the renewal 90 days prior to the expiration of the lease, and you had a number of addresses where that could have been sent and you knew them all and you didn't do it. Therefore, the lease was not timely renewed, the lease is no longer in existence, you've paid your rent through this month and come next Wednesday you're no longer in possession.

Id. at 219-220. The court ordered RS Petroleum's counsel to prepare proposed findings and conclusions. After the court made its ruling, Sprit's counsel argued to the court that the Lease contained a provision "stating that if the tenant remains in the premisses [sic]

---

admitted that they (he and his business associates in Four S . . . Keystone . . . and/or Spirit [sic] Mart, Inc.) had forgotten to send the renewal notice for the Lease for the business property until it was too late.

Defendant's Exhibit B.

after the expiration of the lease they become a tenancy for month to month and Indiana Code is very explicit about 30 day notice to terminate a month to month lease," and the court responded that "well that might apply except in the case where you've filed a lawsuit and you ask for a TRO . . . .  I am not going to extend somebody's lease judicially." Id. at 221.

On July 31, 2013, the court issued its Findings of Fact, Conclusions of Law, and Final Partial Judgment (the "July 31 Order") which made findings consistent with the foregoing, ruled in favor of RS Petroleum, and stated in relevant part:

**FINDINGS OF FACT**

\* \* \* \* \*

13.    The Lease required Keystone to give its notice of its intent to renew the Lease to RS Petroleum by or before April 4, 2013.

\* \* \* \* \*

17.    After the [Marilyn Address] was sold and ceased to exist, Siddique [sic] and others of the Four S Owners met with Shakir at his new office location (9940 Expedition Place, Noblesville. IN  46060) on at least one (1) occasion to discuss the purchase of another gas station, located at 79th and Michigan Road, Indianapolis, IN, among other business.

18.    Herb Jensen remained listed as the Registered Agent for [RS Petroleum] for purposes of service, on the Indiana Secretary of State website, until at least May 9 2013.

19.    Attorney Carina De la Torre of the De lat [sic] Torre Law Office ("De la Torre") represented RS Petroleum with respect to the Purchase Agreement and Lease starting in late 2011, which was known to the Plaintiffs, via their counsel Andy Sheff, who was notified by De la Torre on or about January 10, 2012, of RS Petroleum's intent to file a Complaint for Eviction and Damages.

12

20. De la Torre communicated directly with Siddique [sic] and other Four S Owners regarding the Purchase Agreement and Lease regarding [RS Petroleum's] allegations of the Plaintiffs various breaches of both agreements on or about May 28, 2012.

21. Attorneys Donald J. Smith and Matthew R. King began representing Plaintiffs in May of 2012, and began communicating directly with De la Torre regarding the Purchase Agreement and Lease in their May 31, 2012 letter in response to her May 28, 2012 letter to Plaintiffs.

22. Attorneys Smith and King continued to communicate with De la Torre up through May 9, 2013, when attorney Scott C. Quick of the Quick Law Office began to communicate with them regarding the Purchase Agreement and Lease.

23. While Siddique [sic] allegedly mailed a notice of intent to renew the lease on March 4 (allegedly placing the notice letter dated March 2 in a regular white envelope addressed to the [Marilyn Address] stamped and with a return address of 3402 N. Keystone Ave., Indianapolis, IN, in the US Mail box in front of the Gas Station (the "Alleged Renewal") RS Petroleum never received any such notice.

24. On May 2, 2013, Attorney King issued, by certified mail, a letter to RS Petroleum, enclosing the Alleged Renewal, stating his client had renewed the Lease by virtue of the Alleged Renewal. (the "May 2, 2013 King Letter"). The May 2, 2013 King Letter was mailed to RS Petroleum at the then non-existent [Marilyn Address], and copied to De la Torre because King had "previously received correspondence on RS Petroleum's behalf regarding this Lease" from her.

25. On May 7, 2013, Attorney King issued, by certified mail, a letter to Sohail Shakir and RS Petroleum, Inc. at the 8005 E 42nd St., Indianapolis, IN address indicated on the Indiana Secretary of State website as that belonging to the "Incorporator", as well as to Herbert A. Jensen as Registered Agent at his office address as listed on both the Indiana Secretary of State website (until at least May 9, 2013) and on the Purchase Agreement. (the "May 7, 2013 King Letter"). The May 7, 2013 King Letter enclosed both the May 2, 2013 King Letter and the Alleged Renewal, and stated that the May 2, 2013 King Letter had been "returned to me today with a "RETURN TO SENDER, NO SUCH NUMBER" label."

26.     Shakir and the Four S Owners all live in the Greater Chicago, Illinois metropolitan area and have met at Shakir's home . . . (which is listed in Section G of the RS Petroleum's Indiana Business Entity Report filed May 24, 2012 (and available on the Indiana Secretary of State website)), and also met at other Chicago area restaurants to discuss business and social matters.

## CONCLUSIONS OF LAW

1.     This Court does not need to address the issue of whether Siddique ever actually sent Alleged Renewal letter on or about March 4, 2013, just one (1) month short of the deadline . . . . The Alleged Renewal letter was never given to RS Petroleum or Shakir, as the [Marilyn Address] to which it was directed did not exist, and had not existed for more than one (1) year.

2.     The Lease agreement, drafted by Plaintiff's counsel, did not contain a clear notice provision.

3.     The Plaintiff(s) should have sent any letter indicating his(their) intent to renew the Lease so that RS Petroleum, via Shakir, would have received notice of that intent. The Plaintiff(s) had knowledge of multiple addresses at which they could contact Shakir and serve notice to RS Petroleum, but failed to do so. Clayton v. Fletcher Sav. & Trust Co., 155 [N.E. 539 (Ind. Ct. App. 1927).]

4.     Plaintiff(s) failed to provide RS Petroleum with timely notice to renew the Lease, and the Lease is hereby terminated.

5.     There is no month-to-month tenancy between the Parties. The Court hereby Orders Plaintiff(s) to vacate the [Gas Station] by or before 11:59:59 p.m. on July 31, 2013, and to hand over full possession and control of the same to RS Petroleum.

Appellant's Appendix at 7-11. The court's order that Sprit vacate the Gas Station was ultimately stayed by this court pending the appeal.

14

DISCUSSION

Before discussing the issues raised by Sprit, we observe that the trial court entered findings of fact and conclusions thereon pursuant to Ind. Trial Rule 52(A).  We may not set aside the findings or judgment unless they are clearly erroneous.  Menard, Inc. v. Dage-MTI, Inc., 726 N.E.2d 1206, 1210 (Ind. 2000), reh'g denied.  In our review, we first consider whether the evidence supports the factual findings.  Id.  Second, we consider whether the findings support the judgment.  Id.  "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996).  A judgment is clearly erroneous if it relies on an incorrect legal standard.  Menard, 726 N.E.2d at 1210.  We give due regard to the trial court's ability to assess the credibility of witnesses.  Id.  While we defer substantially to findings of fact, we do not do so to conclusions of law.  Id.  We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment.  Yoon v. Yoon, 711 N.E.2d 1265, 1268 (Ind. 1999).  We evaluate questions of law *de novo* and owe no deference to a trial court's determination of such questions.  Kwolek v. Swickard, 944 N.E.2d 564, 570 (Ind. Ct. App. 2011) (citing McCauley v. Harris, 928 N.E.2d 309, 313 (Ind. Ct. App. 2010), reh'g denied, trans. denied), trans. denied.

To the extent that the issue requires us to interpret the Lease, we observe that "[i]nterpretation of a contract is a pure question of law and is reviewed de novo."  Dunn v. Meridian Mut. Ins. Co., 836 N.E.2d 249, 252 (Ind. 2005); see also Fresh Cut Inc. v.

15

Fazli, 650 N.E.2d 1126, 1129 (Ind. 1995) (noting that a real estate lease is subject to principles of contract law). If a contract's terms are clear and unambiguous, courts must give those terms their clear and ordinary meaning. Id. Courts should interpret a contract so as to harmonize its provisions, rather than place them in conflict. Id. "We will make all attempts to construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless." Rogers v. Lockard, 767 N.E.2d 982, 992 (Ind. Ct. App. 2002). "When a contract's terms are ambiguous or uncertain and its interpretation requires extrinsic evidence, its construction is a matter for the fact-finder." Johnson v. Johnson, 920 N.E.2d 253, 256 (Ind. 2010). "Rules of contract construction and extrinsic evidence may be employed in giving effect to the parties' reasonable expectations." Id.

## I.

The first issue is whether the court erred in concluding that Sprit did not comply with the renewal provision contained in the Lease. Sprit argues that the relevant provisions in the Lease "are clearly unambiguous," that the Lease "states that as long as the notice is sent by first class at the post office address for such party last known to the party giving such notice, should be deemed given as the date when deposited," and that "[t]he evidence of the hearing clearly shows that Siddiqui deposited the letter extending the original lease for a like period of time." Appellant's Brief at 23. Sprit asserts that "Siddiqui did what he should have given the terms of the lease. He sent notice to the only address contained in the lease . . . ." Id. at 24.

16

RS Petroleum begins by asserting that Sprit's arguments are erroneous because the court "did not interpret the Lease, and if [it] did interpret the Lease, its interpretation thereof was immaterial to its findings of fact and conclusions of law that Sprit's alleged notice of renewal was not given to Shakir and/or RS Petroleum and therefore the Lease was not renewed." Appellee's Brief at 13. RS Petroleum argues that the conclusion of law that the Lease "'did not contain a clear notice provision' is not a conclusion that required any interpretation by the trial court," arguing that the court did not have to interpret the lease to determine that the Marilyn Address once belonged to RS Petroleum and that it no longer existed, that "mail directed there would be returned to sender, as was Attorney King's May 2, 2013 letter," that the Alleged Renewal never reached RS Petroleum if it had been sent, and that "[t]he only two logical conclusions regarding Siddiqi's [sic] claim that he sent the Alleged Renewal . . . are a) that the Plaintiffs fabricated their story about sending the Alleged Renewal . . . or b) that the Alleged Renewal was returned by the US Postal Service" much like Attorney King's May 2, 2013 letter. Id. at 13-15. RS Petroleum also argues that the court heard evidence of the long history of personal relationships and business relationships between the parties involved which "provided Sprit / the Plaintiffs numerous addresses for RS Petroleum and /or [sic] its principle [sic], Sohail Shakir, to which Sprit could have directed its Alleged Renewal Notice, pursuant to the poorly drafted but unambiguous language of Lease par. 'x'" and that again, no interpretation was necessary to make such a determination. Id. at 15. RS Petroleum argues that there was only one "logical ramification of the two possible logical

17

conclusions, that being that whether Sprit sent it or not, Shakir / RS Petroleum did not receive the Alleged Renewal Notice." Id.

We begin by noting that both Sprit and RS Petroleum agree that the relevant language of the Lease is *not* ambiguous – they disagree, however, with what the relevant "unambiguous" language requires. Indeed, "a contract is not ambiguous simply because a controversy exists where each party favors a different interpretation." N. Ind. Commuter Transp. Dist. v. Chicago SouthShore & S. Bend R.R., 744 N.E.2d 490, 496 (Ind. Ct. App. 2001), trans. denied. Contracts are ambiguous only "when reasonable persons would find the contract susceptible to multiple interpretations that cannot be resolved within the four corners of the contract," and in such cases "the trier of fact must ascertain extrinsic facts necessary to interpret" it. Id. at 495-496. Conversely, "[w]hen the language of a contract is unambiguous, the intent of the parties is determined from the four corners of the instrument." Id. at 496.

Here, we agree that the relevant language of the Lease, while poorly drafted, is not susceptible to multiple interpretations unable to be resolved within the four corners of the contract. First, Paragraph (b) governs the payment of rent and provides that rent payments be made to the Marilyn Address "or to such other address as [RS Petroleum] shall notify **Lessee** in writing." Appellant's Appendix at 12. The parties do not disagree that, early on, alternative arrangements were made for the payment of rent and that rent payments were made via direct deposit into a bank account of RS Petroleum. Paragraph (a), which precedes the paragraph governing the payment of rent, does not specify where

18

to direct a letter notifying RS Petroleum of Lessee Sprit's intent to renew the Lease and merely states that "[t]o exercise a renewal option Lessee shall give written notice to Lessor at least 90 days prior to the expiration of the term." Id. Paragraph (x) governs how the parties are to provide notice to each other and specifies that such notice "shall be in writing" and shall be either delivered personally or "sent by first class, registered or certified mail addressed to the party intended to be notified at the post office address for such party *last known to the party giving such notice . . . .*" Id. at 17 (emphasis added). Thus, the Lease unambiguously provides that notice was required to be sent to the address last known by Sprit. The fact that Paragraph (b) governing the payment of rent listed the Marilyn Address as where to direct such payments and that Sprit and/or the Plaintiffs had not received written notice of a different address to send rent payments pursuant to that paragraph does not necessarily render the Marilyn Address to be the "last known" address for RS Petroleum. The Lease, drafted by counsel for the Plaintiffs, placed the onus on Sprit to address a letter notifying RS Petroleum of their intent to renew the Lease to the last address for RS Petroleum known to Sprit.

Having so determined, we observe that the record reveals multiple addresses of which Sprit had knowledge in providing RS Petroleum with such notice. Sprit had dealings with multiple attorneys who they knew had recently represented RS Petroleum, including Herb Jensen, whose address was listed on the Purchase Agreement and on the Secretary of State's website as RS Petroleum's registered agent, and Carina de la Torre, who represented RS Petroleum in an action for eviction and damages against the

19

Plaintiffs. Indeed, Attorney King copied de la Torre in sending the May 2, 2013 letter because he had "previously received correspondence on RS Petroleum's behalf regarding this Lease" from her. Defendant's Exhibit C. Sprit also knew that Andrew Sheff, who represented the Plaintiffs in drafting the Purchase Agreement and Lease, had represented RS Petroleum on other matters. Further, evidence was presented that Sprit and the Plaintiffs had visited Shakir's home in Chicago, where all of the parties reside, on multiple occasions, and they "met with Shakir at his new office location (9940 Expedition Place, Noblesville. IN 46060) on at least one (1) occasion to discuss the purchase of another gas station . . . ." Appellant's Appendix at 8. Also, although perhaps not actually known to Sprit in March of 2013, the Indiana Secretary of State website lists the address for RS Petroleum as 8005 East 42nd Street, Indianapolis, Indiana, and Attorney King addressed his May 7, 2013 letter to that address to communicate with RS Petroleum.

Regardless whether Sprit sent the Alleged Renewal to the Marilyn Address, we conclude that Sprit did not comply with the Lease's renewal provision because it did not send notice to RS Petroleum's last known address. Accordingly, the court's conclusions to that effect are not clearly erroneous. Finally, to the extent that Paragraph (x) states that "notice given as aforesaid shall be a sufficient service thereof and shall be deemed given as of the date when deposited in any post office, or in any post office box regularly maintained by the Federal Government," we find that this language determines the date in which such notice takes effect but does not contemplate that notice would be "deemed

20

given" where notice was not sent to the address last known by Sprit. Thus, to the extent Sprit suggests that "the lease states that as long as the notice is sent by first class at the post office address for such party last known to the party giving such notice, [it] should be deemed given as the date when deposited," and that "[t]he evidence of the hearing clearly shows that Siddiqui deposited the letter extending the original lease for a like period of time," we find that even assuming it sent the Alleged Renewal, such argument does not require a different result than the one reached by the trial court.[8] Appellant's Brief at 23.

## II.

The next issue is whether the court erred in determining that there was no year to year or month to month tenancy between Sprit and RS Petroleum. Sprit argues that "RS Petroleum accepted rent from Sprit for the month of July, 2013, and by accepting that rent created either a year to year tenancy or a month to month tenancy." Appellant's Brief at 28-29. Sprit maintains that "the lease unambiguously called for more than one

---

[8] We need not address the issue raised by Sprit of whether it provided timely notice based on the Alleged Renewal because, as discussed, regardless of whether the Alleged Renewal was sent it was not effective to give RS Petroleum notice of Sprit's intent to renew the Lease.

However, even if we were to have found the relevant contractual provisions were ambiguous and addressed this issue, we note that the court made a credibility determination at the hearing and stated that "if pressed to make a decision on" the notification issue it "would find that the [Alleged Renewal] was not sent" and that it did not "believe Mr. Siddiqui . . . ." Transcript at 219. Although the court did not expressly make a written conclusion of law to this effect, it did not find in its July 31 Order that the Alleged Renewal was sent, instead merely stating in Finding 23 that "[w]hile Siddique [sic] allegedly mailed a notice of intent to renew the lease on March 4 . . . RS Petroleum never received any such notice." Appellant's Appendix at 9 (emphasis added). After reviewing the record, we cannot say that the court's reluctance to find that the Alleged Renewal was sent in its July 31 Order, coupled with its statement from the bench that it did not believe that Siddiqui sent the Alleged Renewal, was clearly erroneous.

21

year" and that accordingly a one-year tenancy was created when RS Petroleum accepted payment in July. Id. at 29 (citing Ind. Code § 32-31-1-3). Sprit argues alternatively that if a one-year tenancy was not created by the acceptance of rent in July, "the evidence . . . clearly show[s] that the trial court erred by not at least allowing a month to month tenancy," and cites to Ind. Code § 32-31-1-2. Id. at 30. RS Petroleum argues that the court did not err when it denied Sprit's oral request following its narrative ruling that the lease was not renewed, and that "[i]t would be an incredible disservice against public policy for the Court to grant any of these wishes for Sprit, as one could anticipate a rash of end-of[-]lease litigation being filed in order to justify a holdover post-lease termination, and then argue for the judicial creation of a one year lease." Appellee's Brief at 26.

First, to the extent that Sprit cites to Ind. Code § 32-31-1-3 and argues that the court erred in not finding that a one-year tenancy was created when RS Petroleum accepted payment in July 2013, we note that it is advancing this argument for the first time on appeal, and therefore it has waived the issue for purposes of appellate review. See Grathwohl v. Garrity, 871 N.E.2d 297, 302 (Ind. Ct. App. 2007) ("If a party does not present an issue or argument to the trial court, appellate review of the issue or argument is waived.").

Second, as noted above, after the court stated from the bench that Sprit did not renew the Lease in accordance with its terms, Sprit's counsel argued that the Lease contained a provision "stating that if the tenant remains in the premisses [sic] after the

22

expiration of the lease they become a tenancy for month to month and Indiana Code is very explicit about 30 day notice to terminate a month to month lease." Transcript at 221. The court responded that "well that might apply except in the case where you've filed a lawsuit and you ask for a TRO . . . . I am not going to extend somebody's lease judicially." Id. The provision in the Lease Sprit's counsel referenced appears to be Paragraph (r), titled "**HOLDOVER**," which states that "[i]t is agreed that a holding over beyond the expiration of the term herein specified shall operate as an extension of this Lease from month to month only." Appellant's Appendix at 17. Also, Ind. Code § 32-31-1-2 provides in relevant part that "[a] general tenancy in which the premises are occupied by the express or constructive consent of the landlord is considered to be a tenancy from month to month. . . ."

The record reveals that in April of 2013, soon after the expiration of the time to renew the Lease, Shakir met with Siddiqui, Shahid Hussain, and Sohail Khan at a restaurant, and prior to the meeting, Shakir contacted Akhtar Hassan to mediate the meeting. The purpose of the April Meeting was "to figure out what new lease payment will be and if they buy the store what would be the value of that store." Transcript at 78. Neither Siddiqui nor the other Four S partners in attendance at the meeting stated that they had sent notification to RS Petroleum or Shakir expressing their intent to renew the Lease and instead "they were asking how much more rent . . . ." Id. at 76. No resolutions resulted from the April Meeting, and indeed Shakir was threatened and walked out of the meeting. Thereafter, the Plaintiffs filed their complaint against RS Petroleum on June 14,

2013, sixteen days prior to the end of the Lease term. Then on June 25, 2013, Sprit filed a motion for temporary restraining order asking that the court enter a temporary restraining order "requiring [RS Petroleum] to recognize and accept [Sprit's] renewal of the Lease, enjoining Landlord from evicting [them] from the Premises after June 30, 2013 and until this matter is resolved, and permitting [them] to continue to Lease the Premises after that date" pursuant to the Lease's terms. Id. at 65. Prior to RS Petroleum filing its answer, affirmative defenses, and counterclaim for declaratory judgment, eviction, and damages on July 8, 2013, the Plaintiffs timely deposited a sum of money for July rent in RS Petroleum's account, and at the first hearing on Sprit's motion for temporary restraining order the court decided "to let things ride" and set a hearing date in the same month in order to dispense with it during July 2013. Supplemental Transcript at 33.

Ind. Code § 32-31-1-2 requires that the landlord provide its "express or constructive consent" in order to create a month-to-month tenancy. RS Petroleum informed Sprit that the Lease was ended and Sprit resisted RS Petroleum's attempt to end the lessor/lessee relationship without involving the court system. Payment for July was made via direct deposit into an account of RS Petroleum, and only days after the payment was made the court set a hearing schedule to deal swiftly with Sprit's motion for a temporary restraining order. Under these circumstances, in which the Plaintiffs filed a complaint and Sprit requested a temporary restraining order two weeks prior to the

24

expiration of the lease term, we cannot say that Sprit has established a month to month tenancy based upon Ind. Code § 32-31-1-2 and Paragraph (r).

CONCLUSION

For the foregoing reasons, we affirm the trial court's July 31 Order.

Affirmed.

BARNES, J., and BRADFORD, J., concur.